Howard A. Zbdler, J.
This is a motion for a summary judgment of foreclosure of a chattel mortgage in an action brought for that purpose by the executor of the estate of Julius Bloch, the mortgagee, against Harmon De Vos and Henrietta De Vos, the mortgagors. Julius Bloch died on May 21, 1959.
The chattel mortgage dated March 5, 1959 lists 62 head of dairy cattle designated by ear tag number, present and future-crops, a variety of specified farm machinery and equipment and “ all property, goods and chattels of the same class as described above acquired -by the mortgagors subsequent to the execution of this mortgage and prior to its satisfaction and discharge, including all increases, substitutions, accessories, repairs, replacements ”. The mortgage instrument also contains a clause that the mortgagors “ will not remove from their present location, * * * any of the goods and chattel covered by this mortgage, without written consent of the mortgagee,” and provides that any such removal without such written consent shall be a breach of the mortgage “ and the entire amount then unpaid, shall immediately become due and payable.”
The chattel mortgage recites an indebtedness of $29,522.43 and requires payments of one fourth of the gross monthly receipts from milk produced on the mortgagors’ farm. As additional security for the debt there is a $12,000 second mortgage on the farm realty.
In November, 1959 the mortgagors, without prior written consent by the mortgagee’s estate, sold six “ beef cows ” from their dairy herd for $810. ‘ ‘ Beef cows ” is a term used by dairymen to designate dairy cattle which have become unfit for milk production and which are usually sold to be processed into cheap grades of meat. Under date of January 13, 1960 the plaintiff executor served notice of default on defendants upon the stated grounds that the sale of mortgaged stock was unauthorized and that the mortgagee deemed himself unsafe and insecure. Incorporated in the notice was a demand for payment of the entire principal balance due under the mortgage. The defendants refused to comply with this demand for payment. In March, 1960, a demand was made upon defendants to surrender all the mortgaged property to the plaintiff. This demand also was refused and in May, 1960 the plaintiff executor commenced this foreclosure action.
The complaint allegations themselves do not expressly raise any issue regarding insecurity as such, although the notice of default reciting insecurity as one of its reasons 'is incorporated *167 in and made a part of the complaint. The complaint allegations base plaintiff’s right to relief solely upon the failure of defendants to obtain prior written permission for the sale of the six cows. The defendants’ amended answer sets forth seven affirmative defenses and four counterclaims.
On a plaintiff’s motion for summary judgment, the problem is not whether the answer raises a defense but whether the affidavits and other proof submitted in opposition to the motion show any genuine basis for a defense. (Curry v. Mackenzie, 239 N. Y. 267.) On this particular motion, the inferences which the defendants not unreasonably may request to have drawn from the proof, and the proof itself submitted by them in the form of affidavits and exhibits indicate the existence of factual questions which should only be decided at a trial. A recital of some of the matters set forth by the defendants will show the basis for this conclusion.
It appears that Julius' Bloch, a dealer in farms, farm machinery and equipment and cattle, and the defendants had been engaged since 1952 in an almost continual sequence of open account transactions involving farms, dairy and beef cattle, supplies, cash, machinery and equipment. Periodically the status of the account was mutually determined, in part from monthly statements issued by Julius Bloch, and the defendants ’ obligations secured by a succession of chattel and realty mortgages. Over the years the entire account occasionally would remain unsecured for several months at a time although chattel mortgages supposedly similar to the one here under consideration'were executed in January, 1954 and December, 1955. As part of their dairy operations between 1953 and April, 1959, the defendants swear that at least 300 beef cows, bulls and calves had been disposed of by them to various dealers, including Julius Bloch, and often at his suggestion. Defendants state that at no time over the years was prior written permission ever secured from the mortgagee for any of these transactions. Defendants claim that this was not unusual because the common practices, custom and usage in the dairy business accept numerical maintenance of a producing herd as being in legally sufficient conformity with the mortgage terms and generally leave herd culling to the unhindered discretion of the dairyman despite any contrary written provisions in a mortgage.
Defendants swear that prior to the sale of the six beef cows in the Fall of 1959 plaintiff executor stated he did not care what defendants did with their herd culls. Defendants also state that an offer to pay the proceeds from the sale of the six cows to the estate was refused. Without refutation, defendant Harmon *168 De Vos’ affidavit shows that the plaintiff has accepted over $2,000 in payments under the terms of the chattel mortgage since commencing the present foreclosure action.
Defendants claim that there has been no real impairment to the security of plaintiff because their herd is maintained at a minimum of 70 head and because there was a substitution of other cows for those sold. Defendants further assert that the mortgage security was appraised in the Spring of 1960 by the plaintiff’s appraiser at $20,000, and that the indebtedness now does not exceed $25,000, which is further secured by the $12,000 mortgage on realty.
Between February and June, 1960 requests for permission to cull unproductive cattle and substitute productive stock allegedly were denied by the estate executor and the refusals were honored by the defendants. As a consequence, the defendants claim to have lost several cows by death that should have been disposed of earlier, and state they are maintaining in their herd an increasing number of unproductive cows. Defendants argue that the ultimate result of arbitrary refusal to consent to herd culling could be complete depreciation of the herd in a relatively short time. Defendants further argue that the plaintiff executor is himself a dairy farmer and cattle dealer with knowledge of the common trade practices and custom, and with full awareness of the effects resulting from not culling a herd.
The foregoing summary indicates genuine disputes whether the debt is insecure; whether the mortgagee, expressly or by a course of conduct, waived the provision of the chattel mortgage requiring prior written consent insofar as it relates to sales of herd culls; and whether the default, if one existed, was neither willful nor in bad faith but only so technical in nature that a court of equity should not decree a foreclosure. (Ferlazzo v. Riley, 278 N. Y. 289.) The existence or absence of other triable issues need not now be determined. The plaintiff’s motion for summary judgment should be denied.